UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LEONARD HIGGINS,

        Plaintiff,

Case No. 1:05-CV-846

v.

Hon. Richard Alan Enslen

SPX CORPORATION,

**OPINION**

        Defendant.
_____/

Summary:  Company leaves its manager holding the bag, in the pejorative sense.  Arbitrators tell company you will take the bag, like it or not.  Company tells this Court that the arbitrators made a big mistake and a Brazilian court will need to sort it out.  Manager says I get my relief first.  Sorry, motion granted.

**BACKGROUND**

This matter is before the Court on Defendant SPX Corporation's Motion to Stay or Dismiss. This suit was filed on December 23, 2005 to confirm an arbitration award in favor of Plaintiff Leonard Higgins against Defendant SPX Corporation ("SPX"). (Compl. 1.) The arbitration award concerned Defendant's failure to comply with an indemnification agreement protecting Higgins from defense costs and liability as to employment claims of severed Brazilian workers of two SPX Brazilian subsidiaries which were under the management or partial ownership of Higgins. (Compl. ¶¶ 19-31.) The arbitration award concerned an indemnification agreement that the parties to this matter executed in Muskegon, Michigan. (Comp. ¶ 9.) The arbitrators awarded Higgins substantial

monetary and personal injury[1] damages for breach of the indemnification contract as well as injunctive relief and coercive fines designed to achieve prompt compliance with the award and indemnification contract. (*Id.*)

Now let's add another layer of complexity. The Brazilian arbitration award included certain terms which SPX says were outside the authority of the arbitrators. As such, SPX filed a civil suit before a court of general civil jurisdiction in Sao Paulo, Brazil on December 15, 2005 requesting complete nullification of the arbitration award. (Am. Mot., Exs. 1 & 2.) Consistent with the Brazilian law, it also posted a bond in the amount of R$156,121. (Am. Mot. 5.) The lawsuit was served on Higgins on March 16, 2006. (Resp. 5 n.2.)

In light of the Brazilian law suit, SPX makes two alternative requests: either stay this lawsuit pending adjudication of the Brazilian suit or dismiss this suit on forum non conveniens grounds. Higgins opposes both requests.

**LEGAL STANDARDS**

**1. FAA and International Conventions**

This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 and 9 U.S.C. §§ 203 and 302. This is a lawsuit between a Brazilian Plaintiff and a United States Defendant[2] as to a Brazilian arbitration award concerning an indemnification contract executed in

---

[1] Apparently some 260 workers lost their jobs after the reorganized subsidiaries failed, who then sued Higgins for unpaid severance wages and obtained substantial judgments, which have led to the workers levying against and dispossessing Higgins of residential real estate and other property. (*See* Am. Mot. 3; Compl. ¶ 31.)

[2] The Complaint suggests that SPX is a Delaware corporation with its principal place of business in North Carolina. (Compl. ¶ 3.) Defendant has not contested its citizenship and residence within the United States.

Michigan relating to underlying claims of Brazilian workers.  Jurisdiction has not been disputed, neither is it disputed that the amount in controversy exceeds $75,000.  Nevertheless, since this matter relates to enforcement of an international arbitration award between citizens of contracting states, the pertinent statutory provision of jurisdiction is found at 9 U.S.C. § 203 (which statute provides jurisdiction regardless of the amount in controversy).  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 619 (1985); *Jacada (Europe), Ltd. v. International Marketing Strategies, Inc.*, 401 F.3d 701, 704-05 (6th Cir. 2005).

This suit falls within the terms of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Chapter 3 of the FAA and of Title 9 enforces the Inter-American Convention on International Commercial Arbitration of January 30, 1975, which Convention was done in Panama City.  Both the United States and Brazil were signatories to the Convention.  9 U.S.C.A. § 301, historical notes.  The Convention and the implementing legislation, 9 U.S.C. § 302, have the effect of applying § 207 of Title 9 to the contracting states (as well as some other significant provisions of Chapter 2).  Section 207 (which in part implemented the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 done at New York) provides that an arbitration award is enforceable in any court having jurisdiction.  9 U.S.C.A. §§ 207, 201 & historical notes.  Jurisdiction is defined under 9 U.S.C. § 203 to mean any action falling within the New York Convention regardless of the amount in controversy.  Likewise, 9 U.S.C. § 202 defines this jurisdiction to include arbitration awards as to citizens of two or more contracting states provided that the award relates to a commercial legal relationship between the parties.[3]

---

[3] 9 U.S.C. § 202 expressly excludes arbitration awards affecting only United States citizens from this grant of jurisdiction unless the award has some reasonable relation to one or more foreign states, such as an award involving property or performance abroad.

**2. Doctrine of Forum Non Conveniens**

Forum non conveniens is a doctrine of inherent authority (*see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)), which provides that a court may dismiss a pending suit in deference to proceedings in a foreign jurisdiction for reasons of convenience, judicial economy and justice. For example, the doctrine has been applied for the purpose of avoiding unnecessary inconvenience to one or more parties and to avoid intractable difficulties for the forum court. However, the doctrine, like other inherent authority doctrines, is to be used guardedly, especially since it conflicts with the common law doctrine of *judex tenetur impertiri judicium suum*–a court with jurisdiction is bound to decide matters within that jurisdiction. *See Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821); *Hyde v. Stone*, 61 U.S. (20 How.) 170, 175 (1857); *England v. Louisiana Med. Exam'rs,* 375 U.S. 411, 415 (1964); *Mostyn v. Fabrigas*, 98 Eng. Rep. 1021, 1027 (K.B. 1774) (on appeal from Court of Common Pleas) (decision of Lord Mansfield); *Scottish Ins. Corp. Ltd. v. Wilsons & Clyde Coal Co. Ltd.*, 1949 S.L.T. 230, 239 (H.L.) (on appeal from 1st Div.) (decision of Lord Norman); *contra Societe du Gaz de Paris v. Societe Anonyme de Navigation "Les Armateurs Francais" Paris*, 1926 S.L.T. 33, 36-38 (H.L. 1925) (on appeal from 2nd Div.) (decision of Lord Sumner).[4] *But also see Lubbe & Others v. Cape Plc.,* [2000] 2 Lloyd's Rep. 383, 394-95 (H.L.) (on multiple appeals) (decision of Lord Bingham) (reversing grant of stay on forum non conveniens grounds where stay would "lead to denial of justice").

---

[4] An interesting article on the invention and expansion of the *forum non conveniens* doctrine is R. Brand, *Comparative Forum Non Conveniens and the Hague Convention on Jurisdiction and Judgments*, 37 Texas Int'l L.J. 467, 469-72 (2002). The article credits the courts of Scotland with inventing and applying the doctrine in the Nineteenth Century, even while England did not share Scotland's view of applying parsimony to jurisdiction.

This doctrine of forum non conveniens has as part of its American history the 1947 decision of the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947), which permitted dismissal on forum non conveniens grounds as to a domestic suit.  The *Gilbert* holding was soon affected by Congress' 1948 enactment of 28 U.S.C. § 1404–which permits transfer, but not dismissal, as to suits filed in a federal district court when the transferee district is also within the United States or its territories.  While § 1404 transfers replaced forum non conveniens dismissals as to domestic suits, the doctrine of forum non conveniens persists as to dismissals premised on the jurisdiction of courts of a foreign country.  *See, e.g., Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978); *Ford v. Brown*, 319 F.3d 1302, 1310-11 (11th Cir. 2003); *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106-07 (6th Cir. 1989).

One example of an exercise of forum non conveniens in an arbitration enforcement case is a Second Circuit Court of Appeals' decision, *In re Arbitration of Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 498-501 (2d Cir. 2002).  The Second Circuit there allowed a conditional dismissal to permit the resolution of questions of Ukranian law by a Ukranian court.  The case concerned legal issues which were not determined by the prior arbitration.  The Second Circuit's holding also stated that the foreign forum would be a sufficient venue to allow for enforcement of the arbitration award since assets subject to seizure were located there.

**3. Stay Alternative**

SPX has also suggested that the Court stay this action in order to permit the resolution of the Brazilian legal questions by the Sao Paulo court.  This suggestion flows from Article VI of the New York Convention, which provided that, "If an application for the setting aside or suspension of the award has been made to a competent authority . . ., the authority before which the award is sought

5

to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award . . . ." 9 U.S.C.A. § 201, historical notes, Convention Art. VI. Case law interpreting the Convention stay provision has held it permits stays of enforcement on any weighty prudential ground. *See Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 106 (1st Cir. 1995). In saying so, the First Circuit observed that the mandatory language of 9 U.S.C. § 207 – "The Court shall confirm the award . . . ." – does not argue against a stay because a stay is a "deferral rather than a refusal." *Hewlett-Packard*, 61 F.3d at 106. The logic of the *Hewlett-Packard* decision is supported by the facts that the Convention did not establish any enforcement deadlines for the enforcing courts and that the Article VI stay provision, when coupled with the Article VI bond provision, provide a judicially effective way of allowing litigation attacking an award to continue without endangering the financial interests of the award recipient.

### LEGAL ANALYSIS

In this case, a forum non conveniens dismissal would be both unnecessary and unwise. This is not because this Court is ready or able to decipher either Brazilian law or Portugese. Rather, the pertinent public and private interest factors under *Gilbert* strongly support allowing a Brazilian court to decide the nullification questions now posed in Sao Paulo. Namely, the nullification issues surround the legal standing of the Brazilian arbitration award and depend upon the interpretation of Brazilian law. The witnesses pertinent to the nullification issue, including Higgins, and the lawyers addressing those issue reside and work in Brazil. The original documents pertinent to these issues are located in Brazil and are written in Portugese. The Western District of Michigan has a much less

direct and significant relationship with the controversy in comparison to the Brazilian tribunal, which is already in the process of resolving the dispute.[5]

Notwithstanding the propriety and desirability of the adjudication of the nullification proceeding by a Brazilian court, this does not mean that this action should be dismissed on forum non conveniens grounds. The reasons it should not be is because, even after the nullification proceedings are completed (presumably in favor of Plaintiff), there will remain a second aspect of this suit, enforcement of the arbitration award, which will nevertheless be proper following the presumed confirmation of the arbitration award. In other words, Michigan, because of the location of SPX's assets, may be a proper and convenient forum for Plaintiff to enforce the arbitration award upon successful completion of the nullification suit.[6] The Second Circuit's *Nak Naftogaz* decision referenced above, 311 F.3d at 499-500, including a finding that the arbitration could be effectively enforced in the Ukraine such that enforcement in the United States was unnecessary. The present record is silent upon whether there are significant SPX assets in Brazil apart from the bond. As such, and because Plaintiff has a legitimate legal interest in enforcing the award (once further approved

---

[5]While a forum non conveniens dismissal also requires findings that the Court has subject matter and personal jurisdiction in the first instance and that the forum foreign is available (*i.e.*, the parties consent to jurisdiction there), these findings are readily made on this record. Also, the suggestion by Plaintiff that forum non conveniens is not appropriate because not permitted by the Convention language is also misplaced. Forum non conveniens, because it is conditioned on the exercise of foreign jurisdiction, is a procedural doctrine which does not lead to final dismissal of legal claims. As such, it is properly viewed as a procedural rule that may be applied under the FAA. *Nak Naftogaz*, 311 F.3d at 496. Furthermore, as explained in the *Nak Naftogaz* case, Article V(2) of the New York Convention allows a party to raise in a latter action defects in the arbitration award which could not be raised at the time of the original arbitration. *Nak Naftogaz*, 311 F.3d at 494. This means, in other words, the Brazilian nullification action is one contemplated and authorized by the FAA.

[6]Of course, if Defendant prevails as to nullification, then this suit would be properly dismissed at that time since a nullified award cannot be enforced.

by a Brazilian Court) in Michigan, a place wherein SPX has manufacturing facilities and ready assets, this Court declines the request to dismiss the suit.[7] Dismissal of the suit would be an unwise and unnecessary infringement upon Plaintiff's right to seek enforcement of his arbitration award against Michigan assets upon confirmation of the award.

Nevertheless, comity and efficient use of judicial resources does strongly favor staying this action to await the decision of the Brazilian courts as to the nullification action. Not only was this approach recommend by the *Hewlett-Packard* decision, it has been likewise recommended by several other courts posed with like circumstances. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 317 (2d Cir. 1998); *Spier v. Calzaturificio Tecnica, S.p.A.*, 663 F. Supp. 871, 874-75 (S.D.N.Y. 1987); *Fertilizer Corp. of India v. IDI Mgmt., Inc.,* 517 F. Supp. 948-61 (S.D. Ohio 1981). The reasons for doing so--comity, judicial efficiency, and the convenience of the parties and the courts--are especially strong "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside . . . [since] a court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Europcar*, 156 F.3d at 317.

Therefore, Defendant SPX's Motion will be granted to the extent that this action will be stayed pending a final determination of the nullification suit. The Court will also order the parties

---

[7]SPX's Motion does say that it closed its Muskegon office. (Am. Mot. 11.) However, SPX does not deny that it has significant facilities in Michigan (the Court believes that SPX has sizable facilities in the Eastern District of Michigan). As long as SPX has facilities in Michigan, those facilities are subject to execution by this Court. This is because Federal Rule of Civil Procedure 64 incorporates state collection procedures and because under Michigan law, any Michigan court may issue a writ of execution to any county sheriff within the state. *See* Mich. Comp. Laws § 600.6001; *Landy v. Landy*, 345 N.W.2d 720, 721 (Mich. Ct. App. 1984).

to promptly inform this Court of such final decision[8] to avoid future delay. Because Plaintiff has not requested a bond in connection with the stay, a bond requirement will not be presently imposed, though the Court remains open to further motion to require and/or approve a bond in this matter consistent with Article VI of the New York Convention, should it be necessary.[9]

## **CONCLUSION**

A proper Stay Order shall enter granting SPX's Motion, consistent with this Opinion.

DATED in Kalamazoo, MI:  
April 18, 2006

/s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] By final decision, the Court means that the Brazilian court has made a decision regarding all claims made in the suit and the time for appeal of the decision has elapsed or that any timely appeal of a decision of the Brazilian court has been exhausted upon appeal.

[9] It may well be that the existence of the Brazilian bond alleviates the need for a separate bond in this matter. That bond likely covers damages for delay in collection caused by the Brazilian suit. Since it is contemplated that this suit will not be stayed longer than the finalization of the Brazilian suit, it does not presently appear that an additional bond is necessary.